PEOPLE ex rel. PEOPLE'S TRUST CO. v. FEITNER et al., Tax Com'rs of City of New York.

(Supreme Court, Appellate Division, Second Department. May 8, 1900.)

1. TAXATION—ASSESSMENT—REVIEW—GREATER NEW YORK CHARTER—GENERAL TAX LAW—BONDS—INEQUALITY.

   Gen. Tax Law 1896, c. 908, authorizes the review of tax assessments for overvaluation or inequality; and the Greater New York charter authorizes the review of tax assessments in the city of New York for illegality or overvaluation, or, in the case of real estate, for inequality. *Held*, that the Greater New York charter, being subsequent and special legislation, and not cumulative, controlled, and hence an assessment of bonds in the city of New York could not be reviewed for inequality.

2. SAME—OTHER ASSESSMENTS—EVIDENCE.

   Under Greater New York Charter, § 906, authorizing the review of a tax assessment of personalty in the city of New York for overvaluation, the supreme court will not resort to other assessments on the tax roll, where none are pointed out in the petition, for the purpose of ascertaining whether a tax on bonds was erroneous for overvaluation.

3. SAME—FAILURE TO TAX.

   Failure of assessors to tax similar securities on the tax roll, not shown to have been known to the assessors, is insufficient to show inequality of taxation of plaintiff's securities, since the existence of such other securities might not have been discovered by the assessors.

4. SAME—VALUATION—PETITION.

   An allegation in a petition for the rejection of a tax assessment on bonds, for overvaluation, that a deduction should be made from the face value of the bonds because the petitioner verily believed that more than one-half of the obligors were not responsible for the amount thereof, is insufficient to show such overvaluation, since such allegation was but the statement of a conclusion.

5. SAME.

   An allegation in a petition for the reduction of a tax assessment on bonds secured by mortgages on land that more than one-half of the obligors were not financially responsible was insufficient to show overvaluation, where it was not shown that the value of the property mortgaged was inadequate, or that any loss would result from the obligors' insolvency.

6. SAME—ASSESSMENT—REAL ESTATE—EFFECT.

   The fact that real estate is assessed for taxation at 70 per cent. of its actual value does not show that the assessment of bonds at their full value is invalid, for overvaluation.

Appeal from special term, Kings county.

Certiorari by the people, on the relation of the People's Trust Company, as executor of Cornelius N. Hoagland, deceased, against Thomas

L. Feitner and others, commissioners of taxes and assessments of the city of New York. From an order dismissing the writ (63 N. Y. Supp. 883), relator appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

George W. Wingate, for appellant.

George S. Coleman, for respondents.

GOODRICH, P. J. The relator, as the executor of the last will of Cornelius N. Hoagland, presented a petition to the special term for a writ of certiorari to review an assessment; setting out that it was aggrieved by the action of the commissioners of taxes and assessments of the city of New York in assessing the personal property held by it as such executor at $522,000. The value of the personal property of the estate was itemized in an affidavit accompanying the petition as follows:

| | |
|---|---:|
| Notes .......................................................... | $181,940 00 |
| Bonds secured by mortgage...................................... | 309,800 00 |
| Cash .......................................................... | 11,181 94 |
| Bonds unsecured............................................... | 20,000 00 |
| | $522,921 94 |

The assessment complained of was $309,800, which is the amount of the item, "Bonds secured by mortgage, $309,800." The petition states the grounds of objection as follows: (1) The valuation is the face value of the bonds. (2) The valuation is higher than it justly should have been, and is a higher proportionate value than other property has been valued in the same roll by the board of taxes and assessments, in this: that the valuation of the tax upon real estate throughout the said borough contained in said roll is not to exceed 70 per cent. of the market value thereof. (3) The bonds have been valued as bonds made by a solvent debtor, and not as mortgages, whereas in fact not half the obligors of said bonds are responsible for the amount thereof. (4) The bonds and mortgages in the borough of Brooklyn which are held by other trust companies and by individuals have not been assessed.

Briefly, these objections raise two questions,—as to overvaluation and inequality. Assuming that the inequality is sufficiently alleged, the question arises whether that is a grievance which this court may review. Sections 250 and 251 of the general tax law (chapter 908, Laws 1896) provide for a review by certiorari, on the petition of any person aggrieved, setting forth that the valuation is erroneous by reason of overvaluation or inequality; but the Greater New York charter (section 906) provides for a review in the city of New York "only on the grounds that the assessment is illegal * * * or is erroneous by reason of overvaluation, or in case of real estate, that the same is erroneous by reason of inequality." As between the general tax law and the charter, the latter must control. The former was passed in 1896; the latter, in 1897. "Upon the ground of clearly-expressed intention, it is obvious that the terms of a later special act must control those of a prior general one, and that where they are positively

repugnant, not merely cumulative or auxiliary, the former must repeal the latter, to the extent of such repugnancy, and within the limits assigned to the operation of the special law." End. Interp. St. § 216.

In Rich v. Keyser, 54 Pa. St. 86, in speaking of the effect of a statute over a previous one, it was said (page 89):

"The words of a statute, when unambiguous, are the true guide to the legislative will. That they differ from the words of a prior statute on the same subject is an intimation that they are to have a different, and not the same, construction; for it is as legitimate a use of the legislative power to alter prior statutes as to displace the common law."

This disposes of the question as to the only grounds upon which the assessment of personal property in the city of New York may be reviewed, viz. that the assessment is illegal or is erroneous by reason of overvaluation. Inequality of assessment is expressly confined to real estate. It is not claimed that the assessment is illegal, but that it is erroneous by reason of overvaluation. For the purpose of considering this question as to personal estate, we cannot resort to other assessments on the roll, as there are none pointed out in the petition.

It may be said, in passing, that even under the general tax law the person aggrieved must show that application has been made in due time to the proper officers to correct such assessment. The petition merely shows that the applicant applied to the tax commissioners for a reduction of the assessment, and filed with them an affidavit of Mr. Johnson, secretary of the relator, in which it was stated that the executor "protests against any tax being imposed upon said $309,800, upon the ground that no tax is imposed upon similar securities held by other trust companies and individuals. If the said account is to be considered as taxable as 'bonds made by a solvent debtor,' a deduction of over one-half should be made therefrom, as I verily believe that more than half of the obligors are not responsible for the amount of such bonds." This is hardly sufficient evidence to require any action of the assessors.

Even if the question of inequality were open to review by virtue of the charter, the failure to tax similar securities held by other persons does not necessarily indicate any inequality of taxation which is available to the petitioner. It may be that the existence of such other securities was not discovered by the assessors. If "bonds secured by mortgage" in one part of the roll had appeared to have been taxed at their face, and similar bonds in another part of the roll at one-half their face, inequality might be predicated. It cannot be predicated of an omission to tax securities not upon the roll, and not shown to have been known to the assessors.

The other suggestion of the protest, that a deduction should be made from the face value of the bonds because the affiant verily believed that more than one-half of the obligors were not responsible for the amount of such bonds, can hardly be deemed sufficient evidence to establish the claim. The bonds and mortgages are doubtless in the possession of the applicant, and far better proof than the bare belief of the affiant could have been produced, if the fact existed. It is a mere conclusion, and, as such, insufficient to establish the fact.

Thus, we have left only to consider the main contention, that the

assessment of the bonds secured by mortgage at their face value is erroneous by reason of overvaluation. The bonds in question are stated in Mr. Johnson's affidavit to be secured by mortgages. It does not appear that the value of the premises covered by the mortgages is inadequate to secure the face of the bonds. No foundation is laid for a contention that the bonds are not collectible, or that any loss will result to the estate, even from the utter insolvency of all the obligors.

Neither can the relator justly claim that, because real estate is assessed at 70 per cent. of its actual value, the same proportion must be applied to the bonds and mortgages. Of common knowledge, investment loans on mortgage on real estate are never intended to amount to the value of the real estate. There is always to be a margin which secures the payment of the face value of the bond. For this reason, it cannot be said that, because the mortgaged premises are assessed at 70 per cent., the bond secured by a mortgage should also be assessed in the same proportion. The order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur, except JENKS, J., who takes no part.