(57 App. Div. 261.)

### NEW YORK MILK-PRODUCTS CO. v. DAMON et al.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

1. TAXATION—FOREIGN CORPORATIONS—ASSESSMENT OF REALTY.

Tax Law (Laws 1896, c. 908) § 11, provides that realty of corporations shall be assessed in the tax district in which it is situated in the same manner as the realty of individuals; and section 9 directs that, when realty is owned by a nonresident, it shall be assessed as nonresident, if the occupant resides out of the tax district or if the land is unoccupied. Held, that the land of a foreign corporation, having a place of business in New York outside the tax district in which such realty is situated, is taxable as realty of a nonresident.

2. SAME—LIABILITY OF ASSESSORS.

In an action against assessors for wrongfully assessing realty of a foreign corporation as resident, and selling its property to satisfy the tax, they cannot defeat liability on the theory that their action was judicial or in good faith.

Appeal from trial term, Cattaraugus county.

Action by the New York Milk-Products Company against Hiram A. Damon and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

The action was brought to recover damages for alleged wrongful acts of the defendants in making an assessment against the plaintiff. The facts, as found by the trial court, are substantially as follows: In the year 1897 the plaintiff was a foreign stock corporation, organized and incorporated under the laws of the state of New Jersey, and engaged in the manufacture and sale of milk sugar and cheese, in the states of New Jersey and New York. Its home office was in Jersey City, N. J., and its office within the state of New York for the purpose of transacting its financial business therein, and where all its financial business therein was transacted, and where its warerooms and salesrooms were located, was in the city of New York, and it was there assessed for its personal property used in conducting its business within the state. In the year 1897 the plaintiff was the owner of divers pieces of land

in New Jersey, and in the counties of Cattaraugus and Chautauqua, N. Y., upon which were situated its factories for manufacturing cheese and milk sugar. One of such pieces was situated in the town of Leon, Cattaraugus county, and on it was a cheese factory and sugar of milk refinery. From May 1, 1897, to September 10, 1897, Murray H. Smith, the vice president of the plaintiff, lived and resided with his family in the village and town of Randolph, N. Y., and was engaged in superintending the milk-sugar branch of plaintiff's business throughout Cattaraugus and Chautauqua counties. In the months of May and June, 1897, the plaintiff was making various additions and alterations at its said sugar plants in those counties, the same being made under the supervision of the vice president. From about June 11th to the 25th he was supervising the additions and alterations being made at the property in Leon, and while so engaged purchased his meals of one Fred. Payne, an employé of the plaintiff, who lived with his family on the premises in Leon, and occasionally, when the roads during this time were not good, the vice president spent the night on the premises with Payne. Thereafter, and in the month of June, and after the completion of the additions and alterations at that place, the defendants, as assessors of the town of Leon, visited the premises for the purpose of assessing the same for taxation. Upon the day of such visit, the vice president was not there or in the town, and the defendants were conducted over and about the premises, and the same were shown to them by Payne. The cheese factory on the premises was not operated during the year 1897. The sugar of milk refinery was operated from about June 25 to September 10, 1897. The vice president was the only officer, director, or stockholder of the plaintiff residing in the county of Cattaraugus in the year 1897. The defendants were the assessors of the town of Leon for the year 1897, and made the assessment and assessment roll for that year. They assessed the lands of the plaintiff in that town, above referred to, in the same manner as though the plaintiff was a taxable inhabitant and resident of that town. The plaintiff's name was entered in the first column of the roll among the names of the taxable residents and inhabitants of the town, and opposite its name, and in other columns, the defendants entered the amount of real property owned by the plaintiff in the town,- the assessed and actual valuation, and the total value. Upon this assessment, and based thereon, the board of supervisors of Cattaraugus county levied a tax against the plaintiff in the sum of $49.75, and thereafter issued to the town collector its warrant in the usual form to collect, among others, the tax so levied. The collector, in February and March, 1898, acting under such warrant, entered upon the land of plaintiff, and sold property belonging to plaintiff to partly satisfy the tax. As matter of law, the court decided that plaintiff failed to establish a cause of action, and that the complaint be dismissed. From the judgment entered on this decision, the plaintiff appealed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

James C. Sheldon (B. F. Congdon, of counsel), for appellant.
Frank W. Stevens, for respondents.

MERWIN, J. The defendants, by the assessment complained of, initiated a personal liability against the plaintiff, a foreign corporation, which finally resulted in the seizure and sale by the tax collector of property of the plaintiff for the satisfaction of such liability. The question here is whether the defendants acted beyond their power as assessors. The personal property of the plaintiff was assessable, and was assessed, in the city of New York, where all the financial business of the company was transacted. Tax Law (Laws 1896, c. 908) §§ 7, 11. By the tax law (section 11) it is provided that "the real estate of all incorporated companies liable to taxation, shall be assessed in the tax district in which the same shall be, in the same manner as the real estate of individuals." By section 9 it is provided that "when real

property is owned by a resident outside the tax district where it is situated, it shall be assessed as follows: (1) When the property is occupied it must be assessed to the occupant. (2) If the occupant resides out of the tax district or if the land is unoccupied, it shall be assessed as nonresident, as hereinafter provided by article two." If the land in question had been owned by an individual nonresident, there would seem to be no doubt that it should have been assessed either to Mr. Payne as the occupant, or, if he was not deemed to be the occupant, being only an employé of the owner, then as nonresident. If, under the facts, the company should be deemed to be the occupant, still the property should be assessed as nonresident, as it was expressly so provided, in the contingency of the occupant residing, as in this case, out of the tax district. Under the statute the same test is applicable as in case of an individual under like circumstances. Applying that rule, there would seem to be no doubt that the assessors went beyond their power.

By section 31 of the tax law, provision is made for the manner in which the assessors shall assess upon their assessment rolls corporations liable to taxation, in their respective tax districts. The defendants claim that the provisions of that section apply to the present case, and sustain the action of the defendants. That section evidently regulates the procedure against resident corporations, and not against foreign corporations, as the latter are provided for by section 7 (People ex rel. Armstrong Cork Co. v. Barker, 157 N. Y. 159, 51 N. E. 1043), and by the general provision for the taxation of real estate of nonresidents (section 29). In People v. McLean, 80 N. Y. 254, 258, Judge Andrews, in speaking of those provisions of the Revised Statutes (volume 1, pt. 1, c. 13, tit. 4) from which section 31, above referred to, is in substance taken, says: "The statutory system to which we have referred, however, regulates the taxation of domestic corporations. It is inapplicable to foreign corporations."

It is, however, claimed by the respondents that the cases of People v. Cassity, 46 N. Y. 46, and People ex rel. Buffalo & S. L. R. Co. v. Barker, 48 N. Y. 70, are controlling in their favor. In those cases it was held that domestic railroad corporations, for the purpose of taxation of their real estate, might be deemed to be residents of each town through which their railroad passed, and that the provision of the Revised Statutes from which section 31 above referred to was derived might be construed to authorize the assessors in each town to assess the land of the railroad company used in its business as resident lands. In those cases it seems to have been deemed necessary to produce by construction that result in order to accomplish taxation, in view of the law then existing, and of the peculiar situation of railroad corporations. Very evidently it was not intended to lay down any rule applicable to foreign manufacturing corporations like the plaintiff. These authorities are not, I think, conclusive or applicable to the present situation. I see no way to avoid the conclusion that the defendants had no right to assess the plaintiff as a resident of their town. In so doing, clearly they acted beyond their jurisdiction. Nor are they protected upon the theory that their action was judicial or in good faith. Mygatt v. Washburn, 15 N. Y. 316; Dorwin v. Strickland, 57

N. Y. 492; Hilton v. Fonda, 86 N. Y. 339. It follows that the judgment must be reversed.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.